THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| THOMAS DEAN HULL, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>REMINGTON ARMS COMPANY, INC.,<br><br>Defendant. | No. CV-10-05010 RBL<br><br>ORDER ON VARIOUS MOTIONS<br>[Dkt. #s 30, 32, and 39] |

THIS MATTER is before the Court on the following Motions: Plaintiff Hull's Motion for Sanctions for Alleged Spoliation of Evidence [Dkt. #30]; Defendant Remington's Motion for Summary Judgment excluding the causation opinion of Plaintiff's Expert, Mr. Belk [Dkt. #32]; and the Plaintiff Hull's Motion for Summary Judgment on Defendants' twelve affirmative defenses [Dkt. # 39]. The Court has considered the pleadings and the parties' submissions on these motions. Its rulings are set forth below.

**Background**

This design defect case arises out of the accidental shooting of Plaintiff Hull by his non-party friend, Alex Sotomayor. Hull and Sotomayor were hunting together on October 25, 1990, near Sequim, Washington. Hull was the more experienced hunter. After the hunt they returned to Hull's truck. Sotomayor opened the passenger door and placed his loaded

1

Remington Model 700 bolt action rifle on the seat. Sotomayor later testified that the safety was on. Hull was on the other side of the truck, by the driver's side door. Sotomayor was wearing gloves. While he was unloading the rifle, the gun discharged, and Hull was injured. He denies pulling the trigger. Plaintiff sued Remington, asserting claims for strict liability and negligence, alleging that the 1981 Model 700 bolt action rifle was defective in design and manufacture, and that Remington failed to warn consumers that the gun could fire without the trigger being pulled.

They allege that these "Fire on Safe Release" or "FSR" incidents have happened thousands of times, and that Remington is aware of them (and indeed that "FSR," along with "FBO" (Fire on Bolt Open) and "FBC" (Fire on Bolt Closing) are Remington-created acronyms). They allege that Remington has designed and implemented a new, safer alternative firing mechanism, but has not recalled or warned the public of the dangers of the Walker fire control models.

Like many Remington models, the 700 Model employs a "Walker fire control" mechanism. Generally speaking, this system uses a "connector" between the trigger and the "sear" which is unique to the Walker fire control system. The Defendant's Motion to Exclude Opinion of Plaintiff's Causation Expert and Motion for Summary Judgment [Dkt. # 32] contains a detailed description of the design and operation of the Walker fire control mechanism. Other than its alleged propensity for firing without a trigger pull, the operation of the Walker fire control system does not appear to be in dispute. The parties' respective counsel have apparently litigated several of these cases in the past and have demonstrated an intimate knowledge of the design and operation of the Walker fire control system in Remington Model 700 rifles.

**A. Plaintiff's Motion for sanctions for spoliation of evidence.**

Plaintiff argues that Defendants are guilty of spoliation of evidence. This claim is based on Remington's admission that since 2002, it has not sought to save, document or otherwise preserve evidence of up to 200 incidents where its brand new rifles fired absent a trigger pull, during end-of-manufacturing test firing in the "gallery."

Plaintiff argues that Remington had a duty to preserve the evidence, and seeks sanctions for its failure to do so. Citing, for example, *Glover v. BIC Corp.* 917 F.2d 1410 (9th Cir. 1993), Plaintiff argues for a range of sanctions, from an instruction that the jury is entitled to draw an adverse inference from the destruction of relevant evidence, to striking Defendant's defenses, to precluding it from attacking the Plaintiff's expert's opinions under *Daubert*.

It emphasizes that Remington has been sued approximately 135 times by plaintiffs alleging that the Walker fire control is defective in design, that Remington itself issued a "suspension order" in 1994, instructing its employees to retain all evidence in anticipation of litigation. It points out that in these cases, Remington "always" claims that the inadvertent discharges are the fault of the shooter; it claims (as it has in this case) that the trigger was pulled or the rifle was improperly maintained or was altered. Plaintiff argues that Remington should not benefit from its own failure to document and preserve the very evidence that would support or refute these claims.

Remington denies that it had a duty to preserve the rifles which fire without an apparent trigger pull. It argues that its practice of destroying or "re-working" the fire controls on these rifles is consistent with the industry quality control standard, and with Plaintiff's expert's own practice. Implicit in its argument is the claim that any inadvertent firing on a

3

new rifle in the gallery is the result of a manufacturing defect, not a design defect. They also emphasize that even Plaintiff's expert does not claim that such an analysis of the fire control mechanisms, or the ability to inspect those rifles which fired without an apparent trigger pull in gallery testing would assist him in forming his opinions.

Remington argues, correctly, that the duty to preserve evidence attaches only if (1) the party has notice that the would-be evidence was relevant to the litigation and (2) fails to offer a credible explanation for the destruction such evidence. *See U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002). Under Washington law, a rebuttable presumption that the missing evidence would be damaging to the party who did not produce arises (only) where (1) the evidence was relevant, (2) was in the control of the party whose interest "naturally would be to produce it," and (3) the party fails to produce the evidence without a satisfactory explanation." *See Henderson v. Tyrell, 80 Wn. App. 592, 606* (1996).

This is not a case where the actual item or product in question was destroyed by one party or the other. It is not a case where the only evidence of "what happened" has been destroyed. The parties have each inspected, test fired, measured and X-rayed (or CT scanned) the rifle at issue in great detail. There is a high speed video of the Walker fire control mechanism in action, and Plaintiff has access to it. Neither party nor their experts can replicate the inadvertent discharge absent a trigger pull. Indeed, Remington claims without rebuttal that the "FSR" has not been replicated on any of the rifles involved in any of the prior cases on this subject.

It is Plaintiff's theory, roughly, that the FSR (or FBO, or FBC) incidents happen frequently enough to constitute a design defect, but that they happen without warning and without predictability. They appear to concede that these sorts of discharges cannot be

repeated at will, in a testing environment. In short, they claim it can happen, it has happened, and it will continue to happen without warning in rifles using the Walker fire control system.

Because it is less than clear that the discarded rifle parts would be relevant to the issues in this case, and because it is not clear that they were discarded for any improper purpose, the Motion to impose sanctions for Spoliation is DENIED. However, that does not mean that the evidence that rifles failed, and that they were discarded, is not relevant and admissible. Remington will not be permitted to claim that they have never had an FSR, FBO or FBC incident, or that they documented or tested the offending units after they failed in the gallery. Specific evidentiary issues will be addressed as they arise.

The Plaintiff's Motion for Sanctions for Alleged Spoliation on of Evidence [Dkt. # 30] is DENIED.

**B. Defendants' Motion to Exclude Causation Opinion Testimony of Plaintiff's Expert and Motion for Summary Judgment on Causation**.

Defendant seeks an Order Excluding the opinion testimony of Jack Belk, Plaintiff's expert on causation, arguing that his testimony is not admissible under *Daubert v. Merrill Dow Pharms, Inc., 353 F.3d 1107* (9th Cir. 2003), and it progeny. Belk, too, is a veteran[1] of prior Remington Model 700 bolt action rifle litigation.

Belk's opinion is that the Walker fire control mechanism is defectively designed, because its use of an unnecessary "connector" between the trigger and the sear can permit a rifle to fire absent a trigger pull. In his deposition, Mr. Belk conceded that one possible reason for the firing of the subject rifle was that Sotomayor pulled the trigger. He also

---

[1] According to Plaintiff, Belk has testified in at least 7 cases in six states, and has not had his opinion excluded.

1  admitted that he disregarded Sotomayor's testimony that the safety was on, because it was not
2  possible for the rifle to fire in that condition.

3  Defendant seeks to exclude Belk's opinion under *Daubert*. Its Motion is based
4  primarily on Belks' admitted inability to discount the other possible causes of the firing,
5  including most specifically that Sotomayor pulled the trigger.

6  The gist of Belk's opinion is that the mechanism is defective in design, because the
7  trigger/connector interface can (and does, as evidenced in the video) separate during firing,
8  and the engagement of the connector and the sear (which is released when the trigger is
9  pulled) is too slight – about half the thickness of a dime (what he calls "precipitous
10 engagement"). Belk claims that the connector does not add any benefits, and instead adds the
11 possibility of debris or other contaminants "holding" the connector away from the trigger,
12 allowing the gun to fire absent a trigger pull in a number of situations.

13 Defendants argue first that because he cannot rule out the possibility that the trigger
14 was in fact pulled by Sotomayor, his opinion that the trigger mechanism was defectively
15 designed is not admissible under *Daubert*. The fact that Belk admits that one possible cause
16 of the accident was that Sotomayor pulled the trigger is not fatal to his opinion that, if the
17 trigger was not pulled, the discharge was the result of a design defect in the Walker fire
18 control mechanism. Whether Sotomayor pulled the trigger is, of course, a question for the
19 jury. The Motion on this basis is DENIED.

20 This reasoning is equally applicable to the alternate bases for Defendant's Motion.
21 Specifically, Defendants argue that because Belk recognizes and admits a number of other
22 potential causes for the rifle's firing , and cannot "rule out" that they caused what happened
23 here his testimony should be excluded and summary judgment should be granted. These

issues too present questions of fact, as is demonstrated by the Defendants' own affirmative defenses, discussed below. Plaintiff's expert's opinion does not fail as matter of law under *Daubert*, and Defendant's Motion for Summary Judgment on Causation [Dkt. #32] is therefore DENIED.

**C. Plaintiff's "No evidence" Motion for Summary Judgment on Defendant's Affirmative Defenses.**

Plaintiff moves for summary judgment on Defendants' affirmative defenses, under *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Plaintiff argues that the Defendant cannot meet its initial burden of proof on these defenses because there is no evidence supporting them.

Defendant concedes that it has no evidence supporting affirmative defenses nos. 3, 4, and 7. The Plaintiff's Motion on those affirmative defenses is GRANTED and those specific defenses are DISMISSED.

The remaining defenses may or may not be viable at trial. Defendant continues to bear the burden of proof on those defenses (generally, that the accident was the fault of someone else, that the warnings were adequate, that the design's benefits outweigh its risks, and that there were no warranties made). The removal of these issues from the case would not make it meaningfully easier, faster, or more efficient to try. The Plaintiff's "no evidence"

//
//
//
//

Motion [Dkt. #39] is therefore DENIED as to affirmative defense nos. 1, 2, 5, 6, 8, 9, 10, 11 and 12.  It is GRANTED as to affirmative defense nos. 3, 4, and 7.

**IT IS SO ORDERED.**

DATED this 3rd day of February, 2011.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE